# UNITED STATES DISTRICT COURT
for the
District of Colorado

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>The two residences detailed in Attachments A-1 and<br>A-2, which are attached hereto. | )<br>)<br>)    Case No.   20-sw-00144-MEH<br>)<br>)<br>) |

## APPLICATION FOR SEARCH WARRANTS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENTS A-1 and A-2, which are attached to and incorporated in this Application and Affidavit

located in the   STATE AND   District of   COLORADO  , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B, , which is attached to and incorporated in this Application and Affidavit

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 846 | Distribution or possess with intent to distribute a controlled substance; conspiracy to commit the same |
| 18 U.S.C. §§ 922(a)(1)(A) | Unlawful sale of firearms |
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm or Ammunition |

The application is based on these facts:

☑ Continued on the attached affidavit, which is incorporated by reference.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*s/Travis Johnson*
*Applicant's signature*

TRAVIS JOHNSON SPECIAL AGENT
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   02/05/2020

*Michael E. Hegarty*
*Judge's signature*

City and state:   Denver, CO       Michael E. Hegarty, U.S. Magistrate Judge
*Printed name and title*

**Attachment A-1**
**PROPERTY TO BE SEARCHED:**
**6534 Quitman Street Arvada, CO**

The Residence belonging to Jorge DE LA ROSA-CALDERON and Janine DEHERRERA and that is located at 6534 Quitman Street, Arvada, CO is a single family residence located on Quitman Street. Quitman Street is located off of 64th Ave. between Lowell Blvd. and Tennyson Street. Head north on Quitman after turning off of 64th Ave. and the residence is the last home of the street on the east side of the road. 6534 Quitman is a corner lot, one story, single family residence with white siding and light greenish trimming and brick. One car attached white garage on the south side of the residence. The door to the residence is white and it faces Quitman Street. The knob is on the right side and opens inward from right to left.



**Attachment A-2**
**PROPERTY TO BE SEARCHED:**
**3460 S. Lincoln Street Englewood, CO**

The apartment belonging to Wesley PAPPAS and that is located at 3460 S. Lincoln Street, Englewood, CO is a multi-family building located on S. Lincoln Street. Upon exiting highway 285, head north on S Broadway. Turn right on E. Girard Ave and then turn right onto S. Lincoln St. The building will be on the east side of the road. 3460 S. Lincoln is a one story, multi-family building with basement apartments. Tan brick siding with reddish brick on the lower portion of the building. Parking lot on the north side of the building. The door to the residence is on the south side of the building. There is a set of stairs that leads to two doors. The entry door is on the left side when heading done the stairs. There is a screen door that opens outward from left to right.





# Attachment B
## DESCRIPTION OF ITEMS TO BE SEIZED AND SEARCHED

All evidence, fruits, and instrumentalities of violations of Title 21 U.S.C § 841(a)(1), Title 21 U.S.C. § 846 and Title 18 U.S.C. §§ 922(a)(1)(A) and 922(g)(1) including the following items:

1. Controlled substances, including, methamphetamine, heroin, fentanyl and cocaine.

2. All firearms, firearm parts and other items relating to firearms possession including ammunition, holsters, cleaning kits, photographs, documents, receipts or records related to the sale, purchase, or possession of any firearms.

3. Any vessels or other implements used in connection with the production, packaging, weighing, storage, transport, or distribution of such firearms and controlled substances.

4. Any substance used to mix into controlled substances in order to create a larger volume. Such substances are commonly referred to as "cut."

5. Books, records, receipts, notes, ledgers and other papers relating to the production, transportation, ordering, purchase or distribution of firearms and controlled substances.

6. Books, records, invoices, receipts, records of real estate transactions, bank statements, and related records, certificates of deposits, passbooks, money drafts, letters of credit, money orders, bank drafts, cashier's checks, bank checks, correspondence, safe deposit keys, money wrappers, and other items evidencing the obtaining, secreting, transfer and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or expenditure of money.

7. Cellular telephones and other communications devices. Cellular telephones and other communications devices may be seized, and searched only for the following items:

    i. Assigned number and identifying telephone serial number (ESN, MIN, IMSI, or IMEI);
    ii. Stored list of recent received calls;
    iii. Stored list of recent sent calls;
    iv. Stored contact information;
    v. Stored photographs of controlled substances, suspected criminal activity and/or co-conspirators; and
    vi. Stored text messages.

8. Address and/or telephone books (written or typed by hand as opposed to printed commercially), indices and any papers reflecting names, addresses, telephone numbers, pager numbers, fax number and/or telex numbers of co-conspirators, sources of supply, customers, financial institutions, and other individuals or businesses with whom a financial relationship exists.

9. United States Currency, precious metals, jewelry and financial instruments, including mortgage notes, stocks, and/or bonds representing firearms and drug proceeds.

10. Photographs and digital images, including still photos, negatives, videotapes, films, undeveloped film and the contents therein, slides, in particular, photographs of co-conspirators, of assets and/or firearms and controlled substances.

11. Documents or other articles of personal property tending to indicate the ownership of and/or control over the TARGET LOCATION including, purchase or lease agreements, keys, and mail envelopes.

I, Travis Johnson, being duly sworn, depose and state as follows:

1. Your affiant, Travis Johnson, is a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), United States Department of Justice, Denver, Colorado. Your affiant is an investigative or law enforcement officer of the United States, within the meaning of Title 18, United States Code, Section 2510(7), that is an officer of the United States empowered by law to conduct investigations of, and to make arrests for, offenses enumerated by statute in the United States Code, and the Colorado Statutory Code. Your affiant is authorized under the Federal Rules of Criminal Procedure, Rule 41(a)(1)(C) as a Federal law enforcement officer who is engaged in enforcing the criminal laws, and is within any category of officers authorized by the Attorney General to request a search warrant.

2. Your affiant has been employed as a Special Agent with ATF for over one (1) year. Your affiant's primary duties consist of the enforcement of federal firearms laws, armed narcotics trafficking, and conspiracy laws. Prior to becoming an ATF Special Agent, your affiant was employed with the New Jersey Division of Criminal Justice for nine (9) years, assigned to the Medicaid Fraud Control Unit and the Gangs/Organized Crime Unit. Your affiant graduated from Fordham University with a B.A. in Sociology and a concentration in Criminal Justice. Your affiant served four years in the United States Marine Corps and received an Honorable Discharge in 2008 after achieving the rank of Sergeant. Your affiant served two combat tours overseas, one in Iraq in 2006 and one in Afghanistan in 2008. In June of 2010, your affiant graduated from the Basic Course for Investigators in Sea Girt, New Jersey. While there, your affiant received extensive training in all aspects of police work, including drug identification,

investigative procedures, report writing, Use of Force, and Search and Seizure. Your affiant attended and successfully completed the New Jersey Top Gun Narcotics School in June of 2012. During my current and previous assignments, your affiant has participated in numerous health care fraud, narcotics and gang-related investigations. While participating in these investigations, your affiant have assisted in arrests and in interviewing individuals who were themselves distributors and users of illegal drugs, as well as members and associates of street gangs. Your affiant have also seized and recovered various forms of contraband, including controlled dangerous substances. Your affiant has conducted surveillance of individuals and groups involved in gang-related activity, the manufacturing and distribution of controlled dangerous substances, as well as locations where gang-related and illegal narcotics activities have taken place. Your affiant has testified before the State Grand Jury related to criminal and drug investigations. From my training and experience, your affiant has become familiar with the techniques and methods of operation used by individuals involved in criminal activity to conceal their activities from detection by law enforcement authorities. While employed as a New Jersey Detective, your affiant conducted numerous investigations that have led to the seizure of evidence through the utilization of court-sanctioned searches including, but not limited to, search warrants for cellular telephone data. Your affiant has written and participated in the execution of several federal search warrants involving firearms and narcotics. While employed as an ATF Special Agent, your affiant conducted numerous investigations that have led to the seizure of evidence through the utilization of court-sanctioned searches including, but not limited to, search warrants for residences.

3. This affidavit is made in support of an application for a search warrant for the following Residences: 6534 Quitman Street, Arvada, CO (hereinafter referred to as TARGET

LOCATION 1) and 3460 S. Lincoln Street, Englewood, CO (hereinafter referred to as TARGET LOCATION 2). Each location is more specifically detailed in Attachments A-1 and A-2.

4. As an ATF Special Agent, your affiant is familiar with federal criminal laws pertaining to narcotics violations. Your affiant knows that it is a violation of Title 21 U.S.C. § 841(a)(1) for any person knowingly or intentionally to manufacture, distribute, dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance. Your affiant knows that it is a violation of Title 21 U.S.C. § 846 for any person to conspire to manufacture, distribute, dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance. Your affiant knows that it is a violation of Title 18 U.S.C. § 922(a)(1)(A) for any person except a licensed importer, licensed manufacturer, or licensed dealer, to be engaged in the business of dealing/importing/manufacturing firearms without a license. Furthermore, your affiant knows it is a violation of Title 18 U.S.C. § 922(g)(1) for any person who is a felon to knowingly possess/ship/transport/receive a firearm/ammunition.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21 U.S.C §§ 841(a)(1) and 846 and Title 18 U.S.C. §§ 922(a)(1)(A) and 922(g)(1) have been committed, are being committed, and will be committed by Jorge DE LA ROSA-CALDERON, Janine DEHERRERA and Emilio DEHERRERA. There is also probable cause to believe that the items described in Attachment B are located in the residences described in Attachments A-1 and A-2.

6. Based on your affiant's training and participation in firearms investigation and narcotic investigations involving large amounts of illegal narcotics and U.S. currency your affiant knows:

a. Firearm and narcotic traffickers often hold assets in nominee names to conceal any connection between any such asset and themselves, attempting in this way to avoid detection of their illegal activities by law enforcement agencies.

b. Firearm and narcotic trafficking on the scale revealed in this investigation is frequently a continuing activity, and the traffickers' inventory of firearms and narcotics fluctuates depending on availability and demand. Additionally, firearm and narcotics traffickers commonly front firearms and narcotics, or provide them on consignment to their customers. For all of these reasons, the traffickers must maintain books, receipts, notes, ledgers or some other type of record reflecting such transactions. Firearm and narcotic traffickers must keep their records in some secure, yet readily accessible, place where they can be used and maintained, such as in homes, offices, places of business, automobiles, safes or safe deposit boxes. Traffickers must keep these records of their illegal activities beyond the time during which firearms and/or narcotics are actually in their possession, so that they can maintain contact with their criminal associates for future firearm and/or narcotics transactions and so that they can keep records of prior transactions for which they might be owed or owe inventory or money.

c. Firearm and narcotic traffickers commonly hide firearms, narcotics, firearm and/or drug proceeds, and records of their firearm and/or drug transactions in secure locations, such as those mentioned in paragraph (b) above, as well as in offices or places of business, garages, or storage buildings. Similarly, firearm and narcotics traffickers have ready access to these items, and attempt to conceal them from law enforcement agencies.

d. Firearm and narcotic traffickers commonly maintain addresses or telephone numbers in books or papers which reflect names, addresses, and telephone numbers for their firearm and/or narcotics trafficking associates. These items are sometimes in code.

e. Firearm and narcotics traffickers frequently have photographs of themselves, their associates, their property, firearms, and controlled substances, and such photographs are usually maintained in their homes, offices and place of business. Such photographs constitute evidence of their drug and firearm trafficking activities, establishing their connections with associates, firearms and/or narcotics.

f. Firearm and narcotics traffickers involved in the importation or transportation of firearms and/or narcotics from source cities generally possess documentation, such as telephone records, correspondence, shipyard receipts, wire transfers, airline ticket receipts, and the like, which pertain to the acquisition, transportation, shipment, or receipt of, or payment for, firearms and/or controlled substances, and which evidences the trafficker(s)' participation in the illegal drug scheme.

g. Firearm and narcotic traffickers often maintain some record of the movement of money, whether it is accomplished by wire or inter-bank transfer or by a person acting as a courier. Such records, even though they may be in code, are evidence of the trafficker's illegal activities.

h. Firearm and narcotic traffickers often use false or fictitious names or corporations or other business entities to launder their firearm and/or narcotics proceeds and to send shipments of cash through the mail or other delivery services. Banks, both domestic and abroad, are sometimes utilized by traffickers or their agents though which proceeds from their illegal activities are laundered. Funds are frequently transferred between

banks and various accounts to conceal their sources and origins. It is also common to obtain bearer or other negotiable instruments through foreign banks to avoid the necessity of filing currency transaction reports, in this manner concealing the fact of the transaction and the true ownership of the funds. Documents or records of any kind reflecting any connection with any such entity or transaction constitute evidence of the trafficker's participation in the illegal scheme.

    i. Firearm and narcotic traffickers frequently utilize a continuing pattern of activities to launder and conceal narcotics and/or firearm-generated proceeds and assets, which lasts over a period of years. Firearm and narcotics traffickers use these patterns or schemes to create the appearance of legitimate income so that they can eventually convert the proceeds or assets to themselves or to a nominee under their control. In this way, the traffickers can enjoy and use their properties while attempting to conceal their illegal activities which generated the proceeds or assets.

    j. Firearm and narcotic traffickers who deal in narcotics and firearms often use cell phones to maintain contact with and receive communications from their customers and suppliers and to further their narcotics and/or firearm distribution activity.

    k. Firearm and narcotic traffickers who deal in narcotics and/or illegal firearms often use firearms to protect their storage of drugs and/or firearms and the proceeds from sales of these drugs and/or firearms, and will often have the firearms closely available near these items.

7. The information contained in this affidavit is based upon my personal observations and investigation, as well as on reports and statements of participating agents and investigators. This affidavit contains information necessary to support probable cause for this application. It

is not intended to contain all information known by me or the government.

## FACTS OF THE INVESTIGATION
2019

8. Between the dates of June 6 and January 3, 2020, ATF undercover agents ("UCs") purchased illegal narcotics and firearms from Jorge DE LA ROSA-CALDERON and Emilio DEHERRERA, hereinafter referred to as E. DEHERRERA. DE LA ROSA-CALDERON is a source of supply for narcotics and firearms. Between the above dates, several narcotics and firearms transactions were made with E. DEHERRERA and DE LA ROSA-CALDERON.

9. On June 6, 2019, an UC and E. DEHERRERA exchanged electronic cellular communications for the purposes of arranging the purchase of firearms. Specifically, on June 2, 2019, E. DEHERRERA texted the UC, asking the UC to call him. The UC called to arrange the purchase of firearms with E. DEHERRERA. An individual answered and identified himself as E. DEHERRERA's mother's boyfriend. Agents later identified E. DEHERRERA's mother as Janine DEHERRERA, to be hereinafter referred to as J. DEHERRERA. DE LA ROSA-CALDERON advised the UC that E. DEHERRERA would call the UC back.

10. Later on June 6, 2019, UCs conducted a controlled purchase of three firearms from E. DEHERRERA. During the controlled purchase, E. DEHERRERA advised he had one more AR-type rifle he could sell the UCs, but E. DEHERRERA said he would have to call his mother's boyfriend, DE LA ROSA-CALDERON, to see if DE LA ROSA-CALDERON wanted to sell it.

11. The investigation continued and on October 8, 2019, E. DEHERRERA came to a predetermined location and told the UCs that his source of supply (SOS) for the firearms was on the way. E. DEHERRERA stated to the UCs that his firearms SOS is his mother and her boyfriend, DE LA ROSA-CALDERON. The UCs observed E. DEHERRERA call the SOS

on his cell phone and give directions to the meet location.  J. DEHERRERA and DE LA ROSA-CALDERON arrived a short time later in a black Jeep Patriot and the UCs subsequently purchased three firearms from E. DEHERRERA and DE LA ROSA-CALDERON.

12. On December 4, 2019, DE LA ROSA-CALDERON, J. DEHERRERA and E. DEHERRERA arrived at a predetermined location in a black Jeep Patriot and the UCs subsequently purchased four firearms and approximately 21 grams of crystal methamphetamine from DE LA ROSA-CALDERON.  Furthermore, the UCs discussed a future transaction of one pound of methamphetamine, tar heroin, and firearms with DE LA ROSA-CALDERON.

13. On January 2, 2020, the Honorable Judge N. Reid Neureiter signed a warrant authorizing GPS pings on DE LA ROSA-CALDERON's cell phone numbers 720-210-6377 and 720-291-7222. On January 31, 2020, the Honorable Judge Nina Y. Wang signed a renewal warrant authorizing GPS pings on DE LA ROSA-CALDERON's cell phone number 720-210-6377 for an additional 30 days.  Pings have been received from January 3, 2020 to February 5, 2020.

14. On January 3, ~~2019~~ 2020, DE LA ROSA-CALDERON, J. DEHERRERA and E. DEHERRERA arrived at a predetermined location in a black Jeep Patriot and the UCs subsequently purchased four firearms, approximately 57 grams of crystal methamphetamine, approximately 4 grams of heroin and 89 pills of suspected oxycodone/fentanyl from DE LA ROSA-CALDERON.

15. Within 45 minutes after departing the UC location, ATF SAs learned that DE LA ROSA-CALDERON's geolocation information was at TARGET LOCATION 2 (within a 19 meter deviation). Based on your affiant's training and experience, your affiant believes DE LA ROSA-CALDERON sourced the narcotics from TARGET LOCATION 2.  Your affiant further believes that DE LA ROSA-CALDERON received the narcotics on consignment from TARGET LOCATION 2 and returned to TARGET LOCATION 2 after the UC purchase to

drop of the proceeds from the transaction. This belief is based on DE LA ROSA-CALEDERON proceeding to TARGET LOCATION 2 immediately after the January 3, 2020 transaction. Your affiant's training and experience has shown that individuals do keep firearms and/or drugs at their primary residence so that they have quick and easy access to their product, but that stash houses are also commonly used, whether to store a larger cache of firearms/narcotics and/or proceeds. The behavior exhibited by DE LA ROSA-CALDERON, J. DEHERRERA and E. DEHERRERA with TARGET LOCATION 2 (as further detailed below in paragraph 17) is indicative that they use this location as a stash house.

16. ATF SAs analyzed the geolocation information for DE LA ROSA-CALDERON's cell phone numbers and learned that between the late hours of the night and early hours of morning, the geolocation information for the DE LA ROSA-CALDERON's cell phones have constantly been located in the vicinity of the 6534 Quitman Street, Arvada, Colorado, TARGET LOCATION 1. On January 4, 2020, at approximately 7:56 a.m., geolocation information on DE LA ROSA-CALDERON's cell phone was in the vicinity of TARGET LOCATION 1. Surveillance responded to the aforementioned address and observed DE LA ROSA-CALDERON's known vehicle, a black Jeep Patriot CO/YJO881, parked in front of the residence. Based on the affiant's training and experience, your affiant believes this in an indication that DE LA ROSA-CALDERON uses TARGET LOCATION 1 as his primary residence.

17. On January 7, 2020, a pole camera was placed in front of TARGET LOCATION 2 with a view that shows individuals entering and exiting TARGET LOCATION 2. ATF SAs learned that between the dates of January 7, 2020 and February 3, 2020, DE LA ROSA-CALDERON, J. DEHERRERA and E. DEHERRERA entered TARGET LOCATION 2 approximately fifteen

(15) times, at all hours of the day, and for short periods of time. The shortest duration DE LA ROSA-CALDERON, J. DEHERRERA and E. DEHERRERA were in TARGET LOCATION 2 was approximately 18 minutes and the longest was approximately 1 hour and 29 minutes. ATF SAs further learned that DE LA ROSA-CALDERON, J. DEHERRERA and E. DEHERRERA are together every time entering TARGET LOCATION 2. Specifically on January 13, 2020, at approximately 3:51 p.m., DE LA ROSA-CALDERON, J. DEHERRERA and E. DEHERRERA entered TARGET LOCATION 2. DE LA ROSA-CALDERON was carrying a black bag in his left hand upon entering the TARGET LOCATION 2. Your affiant believes this appears to be the same black bag DE LA ROSA-CALDERON retrieved the narcotics from during the January 3, 2020 controlled purchase. At approximately 4:45 p.m., DE LA ROSA-CALDERON, J. DEHERRERA and E. DEHERRERA exited TARGET LOCATION 2. DE LA ROSA-CALDERON was carrying the black bag. All three individuals entered the black Jeep and departed the area.

18. On January 31, 2020, a pole camera was placed in front of TARGET LOCATION 1 with a view of that shows individual entering and exiting TARGET LOCATION 1. Between the dates of January 31, 2020 and February 4, 2020, your affiant observed DE LA ROSA-CALDERON, J. DEHERRERA and E. DEHERRERA enter and exit TARGET LOCATION 1 numerous times and at all hours of the day and night. Specifically, on January 31, 2020 at approximately 9:13 p.m., DE LA ROSA-CALDERON, J. DEHERRERA and E. DEHERRERA exited TARGET LOCATION 1, entered a black Jeep Patriot and departed the area. On February 1, 2020, at approximately 3:04 a.m., DE LA ROSA-CALDERON, J. DEHERRERA and E. DEHERRERA parked the Jeep Patriot and entered TARGET LOCATION 1. At approximately 5:29 p.m., DE LA ROSA-CALDERON, J. DEHERRERA

and E. DEHERRERA exited TARGET LOCATION 1, entered the black Jeep Patriot and departed the area. Your affiant believes this shows DE LA ROSA-CALDERON, J. DEHERRERA and E. DEHERRERA continue to reside at TARGET LOCATION 1.

19. On February 4, 2020, between 11:04 p.m. and 11:31 p.m., DE LA ROSA-CALDERON and an UC exchanged several text messages. DE LA ROSA-CALDERON told the UC that he could get 5 pounds of methamphetamine and DE LA ROSA-CALDERON wanted to know if the UC wanted them so DE LA ROSA-CALDERON could get them tonight. The UC agreed to purchase the 5 pounds of methamphetamine from DE LA ROSA-CALDERON and the UC told DE LA ROSA-CALDERON to bring the 5 pounds of methamphetamine to the pre-arranged meeting on February 5, 2020.

20. On February 5, 2020, at approximately 12:09 a.m., DE LA ROSA-CALDERON's geolocation information for cell phone number 720-210-6377 was in the vicinity of TARGET LOCATION 2, indicative of his movement toward TARGET LOCATION 2. At approximately 12:11 a.m., visible on the pole camera, three people believed to be DE LA ROSA-CALDERON, J. DEHERRERA and E. DEHERRERA entered TARGET LOCATION 2. At 12:26 a.m., DE LA ROSA-CALDERON's geolocation information was at TARGET LOCATION 2 (within a 16 meter deviation). At approximately 2:09 a.m., three people again believed to be DE LA ROSA-CALDERON, J. DEHERRERA and E. DEHERRERA exited TARGET LOCATION 2 and departed the area. At approximately 2:52 a.m., three people believed to be DE LA ROSA-CALDERON, J. DEHERRERA and E. DEHERRERA entered TARGET LOCATION 1. The movements of these three people, along with the geolocation information from DE LA ROSA-CALDERON's cell phone, indicate that DE LA ROSA-CALDERON, J. DEHERRERA and E. DEHERRERA left from TARGET LOCATION 1 and ultimately

traveled to TARGET LOCATION 2 and after a brief period of time at TARGET LOCATION 2, returned to TARGET LOCATION 1.

21. Based on their movements, as well as your affiant's training and experience, your affiant believes DE LA ROSA-CALDERON picked up the 5 pounds of methamphetamine from TARGET LOCATION 2 and brought the methamphetamine to TARGET LOCATION 1 to store until the pre-arranged meet with the UC later in the day on February 5, 2020.

22. Based on training and experience, your affiant believes DE LA ROSA-CALDERON, J. DEHERRERA and E. DEHERRERA reside at TARGET LOCATION 1 and use the residence to store narcotics and firearms.  Your affiant further believes TARGET LOCATION 2 is a stash house DE LA ROSA-CALDERON, J. DEHERRERA and E. DEHERRERA go to pick up narcotics and/or firearms.  Thus, there is probable cause to believe that the TARGET LOCATIONS will contain the items detailed in Attachment B.  Given DE LA ROSA-CALDERON'S, J. DEHERRERA'S and E. DEHERRERA'S patterns of behavior, including the text messages of firearms and their transport of narcotics and firearms to meet with agents on multiple occasions, there is probable cause to believe that the items specified in Attachment B will be located in the TARGET LOCATIONS.  As detailed above, firearm and narcotic traffickers store firearms, narcotics, the proceeds of sales of firearms/narcotics, and other indicia of firearm/drug trafficking in their residence.  Not only have DE LA ROSA-CALDERON, J. DEHERRERA and E. DEHERRERA demonstrated that they are a firearm and drug traffickers, but given your affiant's experience and training regarding traffickers like DE LA ROSA-CALDERON, J. DEHERRERA and E. DEHERRERA, your affiant believes that the TARGET LOCATIONS will contain the items specified in Attachment B.

**CONCLUSION**

20. Based on the foregoing, there is probable cause to believe that contained within the residences located at 6534 Quitman Street, Arvada, CO and 3460 S. Lincoln Street, Englewood, CO, are items that have been used in the commission of a crime and constitutes evidence, fruits, and instrumentalities of violations of Title 21 U.S.C §§ 841(a)(1) and 846 and Title 18 U.S.C. § 922(a)(1)(A) and 922(g)(1). With the above information, your affiant formally requests the issuance of a search warrant for the aforementioned premises.

21. Pursuant to Rule 41(e)(2)(A)(i) of the Federal Rules of Criminal Procedure, your affiant understands and will act in accordance with the following: an agent is required to file with the courts an inventory return, that is, and itemized list of the property seized, within fourteen (14) days of the execution of the warrant.

22. The statements made in this affidavit are made based on your affiant's personal observations and investigation, and information communicated or reported to your affiant during the investigation by other participants in the investigation, as the content of this affidavit indicates. I declare under penalty and perjury that the foregoing is true and correct to the best of my knowledge.

       _s/Travis Johnson_____
       Travis Johnson
       Special Agent, ATF

Sworn to before me this 5th day of February, 2020

_____
Honorable Michael E. Hegarty
United States Magistrate Judge
District of Colorado

**Reviewed and submitted by Celeste Rangel, Assistant United States Attorney.**